# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|   |   |   |
|---|---|---|
| **GHULAM ALI**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 17-cv-1899 (TSC) |
| | ) | |
| **SCOTT PRUITT**, *United States Environmental Protection Agency*, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This case is *pro se* plaintiff Ghulam Ali's third lawsuit against his employer, the Environmental Protection Agency (EPA). Ali claims the EPA not only retaliated against him for filing prior lawsuits, but also discriminated against him because of his race, national origin, gender, age, and disability. *See* 42 U.S.C. § 2000e (Title VII); 29 U.S.C. §§ 701 *et seq.*, (Rehabilitation Act); 29 U.S.C. §§ 621 *et seq.* (Age Discrimination in Employment Act). The court previously granted in part and denied in part the EPA's motion for summary judgment, *Ali v. Pruitt*, No. 17-CV-1899 (TSC), 2020 WL 6134671 (D.D.C. Oct. 19, 2020), and allowed the agency to file a renewed summary judgment motion on the only surviving claim: whether "similarly situated individuals" were assigned cost-benefit analysis work, while Ali was assigned a few small projects that he designed and on which he persuaded the EPA to allow him to work. *Ali*, 2020 WL 6134671, at *13-4. The EPA now seeks summary judgment on that claim, ECF No. 20, and, for the reasons set forth below, the court will GRANT the EPA's motion and dismiss this action with prejudice.

## I.  LEGAL STANDARDS

### A. Motions for Summary Judgment

Summary judgment is appropriate where there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  In determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the non-moving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The moving party bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323 (internal quotation marks omitted).  The nonmoving party, in response, must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  *Id.* at 324 (internal quotation marks omitted).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986) (citations omitted).

### B. *Pro Se* Litigants

"Courts must construe *pro se* filings liberally." *Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (*pro se* pleadings should be held "to less stringent standards than formal pleadings drafted by lawyers.").  Despite this standard, "a *pro se* plaintiff's opposition to a motion for summary judgment, like any other, must consist of more than mere unsupported allegations and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial." *Prunte v. Universal Music*

*Grp., Inc.*, 699 F. Supp. 2d 15, 21–22 (D.D.C. 2010), *aff'd*, 425 Fed. App'x 1 (D.C. Cir. 2011) (citing Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324). As the non-moving party, a *pro se* plaintiff "is required to provide evidence that would permit a reasonable jury to find in his favor." *Prunte*, 699 F. Supp. 2d at 22 (internal quotations omitted) (citing *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242 (D.C. Cir. 1987)).

## C. Discrimination Claims

Title VII prohibits "discrimination against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color . . . sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Where, as here, a plaintiff has offered circumstantial evidence of Title VII discrimination, the court applies the familiar burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to determine whether summary judgment is appropriate. Under that framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. *Id*. at 802. In order to do so, a plaintiff must show that: (1) he belongs to a protected class under Title VII, (2) he experienced an adverse employment action, and (3) the adverse employment action "gives rise to an inference of discrimination." *Royall v. Nat'l Ass'n of Letter Carriers, AFL-CIO*, 548 F.3d 137, 144 (D.C. Cir. 2008) (internal citation omitted). The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for taking the challenged employment action. *Id.* If an employer proffers such a reason, the burden reverts to the plaintiff to demonstrate that the employer's purported justification for the adverse employment action was merely a pretext for unlawful discrimination. *Id.*

The D.C. Circuit has determined that the question of whether a plaintiff in a Title VII case has established a prima facie case is "almost always irrelevant." *Brady v. Off. of Sergeant at Arms*, 520 F.3d 490, 493 (D.C. Cir. 2008). When "an employee has suffered an adverse employment action and

an employer has asserted a legitimate, non-discriminatory reason for the decision, the district court need not—*and should not*—decide whether the plaintiff actually made out a prima facie case under *McDonnell Douglas*." *Id.* at 494 (emphasis in original). The summary judgment analysis instead must focus on "one central question":

> Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted nondiscriminatory reason was *not the actual reason* and that the employer intentionally discriminated against the employee on the basis of race, color, religion, sex, or national origin?

*Id.* (emphasis added). This same paradigm applies to age and disability claims. *Teneyck v. Omni Shoreham Hotel*, 365 F.3d 1139, 1155 (D.C. Cir. 2004) (the ADEA applies to individuals over 40); *Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1288 (D.C. Cir. 1998) (Rehabilitation Act).

## II. COST-BENEFIT ECONOMIC ANALYSIS WORK [1]

Ali asserts that "similarly situated individuals" were assigned economic cost-benefit analysis work, while he was assigned a few small projects of this nature that he designed and on which he persuaded the EPA to allow him to work. Compl. at 12–14. Ali claims that, as the only economist in his division, he should have been assigned cost-benefit work, which was instead assigned to younger, mostly female Caucasian employees. *Id.* at 13–14. Ali asserts that his opportunities for advancement

---

[1] The court previously warned Ali of the consequences of failing to respond to the EPA's Statement of Undisputed Facts (SOF) and provided him with a template for a response. ECF No. 21. The court also reminded Ali that he must support his factual allegations with citations to the record. ECF Nos. 21, 29. Ali failed to heed either warning. Therefore, the court will treat the EPA's SOF as conceded, except to the extent Ali's brief points to portions of the record showing that the asserted fact is disputed. *See* Local Civil Rule 7(h)(1) ("In determining a motion for summary judgment, the court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion.").

have been hindered by the EPA's failure to assign him cost-benefit work, as evidenced by his pay grade, which is purportedly lower "than anyone else[s]." *Id*. at 14. [2]

A. **Adverse Employment Action**

The EPA argues that Ali has not established a prima facie case of discrimination because the EPA's failure to assign him more cost-benefit work was not an adverse employment action. In the disparate treatment context, an adverse employment action is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." *Douglas v. Donovan*, 559 F.3d 549, 552 (D.C. Cir. 2009) (cleaned up and citation omitted). The D.C. Circuit has articulated that while "purely subjective injuries, such as dissatisfaction with a reassignment, public humiliation, or loss of reputation, are not adverse actions, the threshold is met when an employee experiences materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities such that a reasonable trier of fact could find objectively tangible harm." *Holcomb v. Powell*, 433 F.3d 889, 902 (D.C. Cir. 2006) (cleaned up and citation omitted). The EPA claims that Ali did not suffer monetary losses or any other material changes to the conditions of his employment and therefore cannot establish that he experienced an adverse employment action.

Ali correctly points out that "reassignment with significantly different responsibilities generally indicates an adverse action." *Holcomb v. Powell*, 433 F.3d 889, 902 (D.C. Cir. 2006) (cleaned up and citations omitted). He contends he experienced a significant diminution of duties

---

[2] In prior litigation, the court granted the EPA summary judgment on Ali's failure to promote claims and the Court of Appeals affirmed this ruling. *Ali v. McCarthy*, 179 F. Supp. 3d 54, 64 (D.D.C. 2016), *aff'd Ali v. Pruitt*, 727 F. App'x 692 (D.C. Cir. 2018). Accordingly, the court will not address Ali's claims regarding discrimination in promotions.

when the EPA assigned cost-benefit work—which he describes as a "core" function of his job—to others.

According to Ali, the EPA transferred him from the Engineering and Analysis Division to the Standards and Health Protection Division in 2004 to manage "economic related tasks." Pls. Resp. at 2, 8; Pls. Statement at 2–3.[3] Ali claims that, at the time of the transfer, Mike Morris (whom Ali describes as "white") was "in charge of cost analysis work in the Division," and Ali's supervisor purportedly told Ali that upon Morris' retirement, Ali would take over this responsibility, but this never happened. Pls. Statement at 3. Instead, Ali's duties in his new division involved conducting research, "modeling," and writing articles for submission to journals. Hisel-McCoy Decl. ¶ 5. Ali asserts that these duties were outside the "core functions" of his job, and the EPA discriminated against him in assigning him such work. Pls. Resp. at 2, 12–13.

Ali's argument is unavailing because he has not proffered evidence that cost-benefit work was a core function of his job; he did not produce a job description to substantiate his "core" function argument, nor any other evidence such as language from performance evaluations, or internal communications discussing his job duties. Thus, there is no evidence that he experienced a diminution of duties.

Moreover, there is no evidence that the EPA acted with discriminatory intent when it assigned Ali research and publication duties when it transferred him to the Standards and Health Protection Division. There is no indication that Ali's supervisor in his prior division had the authority to promise him specific assignments in another division. And even if the supervisor did have the

---

[3] Ali's opposition brief contains three parts, each of which is separately numbered: 1) "Response," 2) "Statement," and 3) "Undisputed Facts," the latter of which contains only a few citations to the record relating to issues that the court previously resolved on summary judgment. See ECF No. 30.

authority to do so, there is no evidence that Ali was assigned less cost-benefit work than Morris. Although the timing is unclear, at some point the Standards and Health Protection Division began using contractors to perform cost-benefit work because, as Division Director Sara Hisel-McCoy explained, certain "economic expertise [was] required to conduct an analysis." Hisel-McCoy Decl. ¶ 4. Similarly, Ali admits that "[t]he economic analysis of regulation usually is too much work for an economist to do. Therefore, probably contractor support is provided . . . ." Pls. Undisputed Facts at 5 n.2. Even viewed in the light most favorable to Ali, there is no indication that the decision to contract out some or most of the cost-benefit work constituted discrimination against him.[4]

Accordingly, the essence of Ali's Complaint is that the EPA did not assign him to oversee larger *projects* that *included* cost-benefit work. On his Division's projects involving contractor cost-benefit work, an EPA employee serves as the work assignment manager. Hisel-McCoy Decl. ¶ 4. Without evidentiary support, Ali asserts that such assignments increase one's likelihood of receiving bonuses and promotions and therefore he suffered an adverse employment action by not being designated a work assignment manager. Pls. Resp. at 11–12.

Ali's conclusory and speculative allegations are not enough to survive a motion for summary judgment. *See Lester v. Natsios*, 290 F. Supp. 2d 11, 30 (D.D.C. 2003). "[S]imply stating that [an assignment] would have provided growth potential does not establish an adverse action." *Dorns v. Geithner*, 692 F. Supp. 2d 119, 132–33 (D.D.C. 2010) (citations omitted). Statements based on "unsubstantiated personal belief [are] insufficient to create a genuine dispute." *Herbert v. Architect of Capitol*, 766 F. Supp. 2d 59, 77 (D.D.C. 2011) (citations omitted). Rather, "[t]o resist summary

---

[4] Ali admits that he "was not involved even once in [cost-benefit work] before [his] EEO complaint, even though" he was purportedly reassigned to the SHP Division to manage such tasks. Pls. Statement at 3. Accordingly, the EPA is entitled to summary judgment on his cost-benefit retaliation claim.

judgment, a plaintiff must put forward competent evidence in support of his claims." *Id.*; *Sykes v. Napolitano*, 710 F. Supp. 2d 133, 144 (D.D.C. 2010) (noting that the court did not disagree that an allegedly discriminatory transfer might have affected plaintiff's "standing and promotion opportunities . . . but there [wa]s no objective or historical evidence to support this proposition"). Consequently, Ali has not made out a prima facie case for disparate treatment.

B.      **Alleged Comparators**

Had Ali been able to make out a prima facie case for discrimination, he would still need to produce sufficient evidence for a reasonable jury to find that the EPA's reason for giving work assignment manager tasks to his coworkers was "not the actual reason and that the employer intentionally discriminated against" him. *Parker-Darby v. Dep't of Homeland Sec.*, 869 F. Supp. 2d 17, 22–23 (D.D.C. 2012) (citing *Adeyemi v. District of Columbia,* 525 F.3d 1222, 1226 (D.C. Cir. 2008)). "A plaintiff can demonstrate pretext" in several ways, including showing "that the employer has treated similarly situated employees outside of her protected class more favorably in the same circumstances." *Parker-Darby*, 869 F. Supp. 2d at 23 (citing *Brady*, 520 F.3d at 495) (cleaned up). In his Complaint, Ali appears to name Karen Milam and Gary Russo as comparators. Compl. at 12–13.

At all relevant times, Ali was a GS-13 Economist in the EPA's Office of Science and Technology (OST). Def. SOF ¶ 1. The OST is divided into three divisions: (1) Engineering and Analysis ("EA Division"); (2) Health and Ecological Criteria; and (3) the division in which Ali worked during the time relevant to this litigation: Standards and Health Protection ("SHP Division"). Def. SOF ¶¶ 1, 4. Each division has different functions, and each contains a separate chain of command and supervisory structure. Hisel-McCoy Decl. ¶ 3. As SHP Division Director and Ali's

second-line supervisor, Hisel-McCoy did not supervise any staff outside her division. Hisel-McCoy Decl. ¶¶ 3, 5. Ali was the only economist in the SHP Division. Pls. Resp. at 2.

Within the SHP Division, there are three branches: (1) Ali's branch—Fish, Shellfish, Beaches and Outreach (FSBO); (2) National Water Quality Standards; and (3) Regional, State and Tribal Support.[5] As FSBO Branch Chief, Denise Hawkins, an African-American woman born in 1951, was Ali's first-line supervisor. Def. SOF ¶ 2. Hawkins was responsible for assigning and coordinating Ali's work; she has since retired. Hisel-McCoy Decl. ¶ 5.

While Ali's prior division, EA, regularly performed cost-benefit work, the opportunity for that work was limited in SHP, "especially" in the FSBO Branch where Ali worked during the relevant period. Hisel-McCoy Decl. ¶ 4; *Ali*, No. 17-CV-1899 (TSC), 2020 WL 6134671, at *3. Moreover, although cross-division coordination may be required for some projects, the SHP Division's management generally did not assign work to an employee in the other two divisions, or vice versa. Hisel-McCoy Decl. ¶ 3.

1. Karen Milam

Despite this general rule, economist Karen Milam—who is Caucasian, younger than Ali, and worked in the EA Division—was designated as the work assignment manager on a project in the SHP Division on or around 2012-2013, when contractors were performing cost-benefit work. *See* Pls. Resp. at 3, 9, 19; Hisel-McCoy Decl. ¶¶ 4, 9. Milam served as the work assignment manager for the Florida Nutrients Rulemaking, which was a "highly publicized and complicated rulemaking." Hisel-McCoy Decl. ¶ 9. Ali argues that this cross-division assignment and Ali's purported superior credentials are evidence of discriminatory intent. Pls. Resp. at 3, 6; Pls. Statement at 6–7.

---

[5] An OST organizational chart is attached to this Memorandum Opinion. *See* Hisel-McCoy Decl., Ex. 1.

Ali's argument is unpersuasive because he has produced no evidence that Milam is an appropriate comparator. Both Hisel-McCoy and Ali indicate that "[w]ork is assigned by the branch chiefs [within the Division,] not the Division Director." *See* Pls. Statement at 5; Hisel-McCoy Decl. ¶ 3. But neither party addresses whether the FSBO Branch, where Ali worked, oversaw the Florida project or whether another branch within the SHP Division did so. Thus, it is not clear that Milam—while assigned to the Florida project—worked for the same Branch Chief as did Ali. Without such evidence, Ali has "failed to satisfy [his] threshold burden of showing that [he] and [Milam] were similarly situated." *See Mason v. Geithner*, 811 F. Supp. 2d 128, 188 (D.D.C. 2011), *aff'd*, 492 F. App'x 122 (D.C. Cir. 2012); *Robertson v. Dodaro*, 767 F. Supp. 2d 185, 195 (D.D.C. 2011) (explaining that comparator evidence "will only give rise to an inference of discrimination if "all of the relevant aspects," of the employment situations are "nearly identical.") (quoting *Neuren v. Adduci, Mastriani, Meeks & Schill*, 43 F.3d 1507, 1514 (D.C. Cir. 1995)).

   2. Gary Russo

Dr. Gary Russo was a GS-13 Environmental Scientist who also worked in Ali's division, but in a different branch: National Water Quality Standards. *See* Hisel-McCoy Decl. ¶ 7. Hisel-McCoy stated that she was only aware of two projects assigned to Russo on or around 2012-2013 that involved cost-benefit work. *Id*. On one assignment Russo was the lead rule-writer and served as the work assignment manager for the economic analysis on a 40 CFR Part 131 National Water Quality standards rule revision. *Id*. The second project involved developing a spreadsheet tool allowing states and tribes to simplify the economic showing for Water and Quality Standards revision work. *Id*. Both projects relied on Russo's "expert understanding of the 40 C.F.R. Part 131 regulations and the National Water Quality standards program, not his ability to personally conduct an economic analysis, as that analysis was conducted by a contractor." *Id*. According to Hisel-McCoy, unlike

Russo, Ali did not have a thorough understanding of either the CFR regulations or the National Water Quality standards Program. *Id*.

Ali argues that the EPA should have made him the work assignment manager because he was an economist, while Russo was a scientist, and Ali had more seniority than Russo, whom Ali describes as White and younger. Pls. Resp. at 3, 8–9, 19; Pls. Statement at 4–5. But Ali relies on his own self-serving statements to support his position. He has produced no evidence calling into question Hisel-McCoy's statement that Russo had a thorough understanding of the relevant CFR and the National Water Quality Standards, while Ali did not, and that the work assignment manager designation assignment was not based on the ability of the employee to conduct economic analysis.

Moreover, it is not clear whether Russo worked on this project while in his branch, National Water Quality Standards, or whether he did so in the FSBO Branch where Ali worked. If the former is the case, Russo and Ali did not work under the same Branch Chief and therefore are not similarly situated in all relevant respects. *Robertson*, 767 F. Supp. 2d at 195.

3. Other Alleged Comparators

At various points in his response, Ali appears to name Beth Lemond, Lars Wilcut, and Leanne Stahl as comparators. Pls. Resp. at 16, 19; Pls Statement at 4–5, 9. But Ali fails to proffer any facts regarding these co-workers or their alleged work assignment manager projects/cost-benefit assignments. Ali cannot establish a genuine issue of material fact by merely listing the names of his purported comparators.

## III.  CONCLUSION [6]

For the reasons set forth above, by separate order, the court will GRANT the EPA's Renewed Motion for Summary Judgment and dismiss this action prejudice.

Date:  March 10, 2022

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge

---

[6] This court previously granted summary judgment on Ali's hostile work environment claim.  *Ali*, 2020 WL 6134671, at *12, n.14.  As he has simply rehashed the same claims here, the court will not revisit that decision.